UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Marvin Lewis Chestnut,                         Case No.: 22-CV-2714
Lawrence Anthony Barnes,
Charles Nguyen Thorstad,
Tywan Lamont Walker,
Larry Keshawn Mitchell,
Robert Bradley Sayers,                              **COMPLAINT**
Nieta Jamil Aki Jackson, and
Otis Lee Walker,                             **JURY TRIAL REQUESTED**

                Plaintiffs,

v.

Darcy Klund, individually;
Michael Kennedy, individually;
Joseph Brown, individually;
Jaclyn Marie Tuma, individually;
Jonathan Stalboerger, individually;
Paul Luther Huynh, individually;
Matthew Severence, individually;
Souphaphone Daoheuang, individually;
Kyle Pond, individually; and
Jacob Spies, individually

                Defendants.

_____

## I.    PRELIMINARY STATEMENT

1. Plaintiffs, all members of the Minnesota Freedom Fighters, were arrested

    for doing exactly what Minneapolis city officials asked them to do:  help

    keep the peace at a moment of civil unrest.  In the wake of the killing by

    law enforcement of Winston Smith, civil unrest broke out in the Uptown

area of Minneapolis.  Minneapolis city officials called on the Minnesota Freedom Fighters and other community partners to help keep the peace in Uptown and act as a bridge between protestors and Minneapolis Police Officers.  Putting their own safety at risk, the Plaintiffs responded to the call and went to the area of Lake Street and Hennepin Avenue in Minneapolis.  All eight of the Plaintiffs were standing peaceably on the sidewalk of the northeast corner of the intersection attempting by their collective physical presence alone to interrupt the violent actions of protestors and thereby help Minneapolis officials, including officers of the Minneapolis Police Department, calm the violence.  Nonetheless, though there was never arguable probable cause to believe that any of the Plaintiffs were engaged in any criminal activity or part of any unit engaged in criminal activity, the Defendant Minneapolis Police Officers arrested them.  These actions by certain Minneapolis Police Officers, to arrest people they knew were there to help and had done nothing wrong, clearly violated the Plaintiffs' constitutional rights.

2. Plaintiffs now commence this action against the above defendants for violations of their rights under the United States Constitution including their right under the Fourth Amendment not to be subject to unreasonable seizure.  Plaintiffs' claims against the individual defendants are grounded in 42 U.S.C. §1983.

3.  Plaintiffs demand that this action be tried to a jury.

## II.   PARTIES

*A. Plaintiffs*

4.    Plaintiff Marvin Lewis Chestnut ("Chestnut"), is an individual residing in the City of Union City, State of Georgia.

5.    Plaintiff Lawrence Anthony Barnes ("Barnes"), is an individual residing in the City of Minnetonka, State of Minnesota.

6.    Plaintiff Charles Nguyen Thorstad ("Thorstad"), is an individual residing in the City of Brooklyn Park, State of Minnesota,

7.    Plaintiff Tywan Lamont Walker ("T. Walker"), is an individual residing in the City of Minneapolis, State of Minnesota.

8.    Plaintiff Larry Keshawn Mitchell ("Mitchell"), is an individual residing in the City of Portsmouth, State of Virginia.

9.    Plaintiff Robert Bradley Sayers ("Sayers"), is an individual residing in the City of Golden Valley, State of Minnesota.

10.    Plaintiff Nieta Jamil Aki Jackson ("Jackson") is an individual residing in the City of Minneapolis, State of Minnesota.

11.    Plaintiff Otis Lee Walker ("O. Walker"), is an individual residing in the City of Minneapolis, State of Minnesota.

B. *Defendant Minneapolis Police Officers*

12.    Defendant Darcy Klund, Minneapolis Police Department Badge Number 3728, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

13.    Defendant Michael Kennedy, Minneapolis Police Department Badge Number 3693, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

14.    Defendant Joseph Brown, Minneapolis Police Department Badge Number 0830, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

15.    Defendant Jaclyn Marie Tuma, Minneapolis Police Department Badge Number 3414, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of her employment and under color of law.

16.    Defendant Jonathan Stalboerger, Minneapolis Police Department Badge Number 6758, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

17.    Defendant Paul Luther Huynh, Minneapolis Police Department Badge Number 3198, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

18.    Defendant Matthew Severence, Minneapolis Police Department Badge Number 6457, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

19.    Defendant Souphaphone Daoheuang, Minneapolis Police Department Badge Number 1424, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of her employment and under color of law.

20.    Defendant Kyle Pond, Minneapolis Police Department Badge Number 5775, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

21.    Defendant Jacob Spies, Minneapolis Police Department Badge Number 5754, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department acting within the course and scope of his employment and under color of law.

## III.   JURISDICTION

22.  This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §1331, 1343(a)(3) and (4) and 1367(a) and the aforementioned statutory and constitutional provisions.

## IV. FACTS

### C. Minnesota Freedom Fighters: History and Mission

23.  On May 25, 2020, George Floyd was murdered by a Minneapolis Police Officer.  The City of Minneapolis plunged into unrest.  Protesting, rioting, looting and destruction of property occurred across the city.

24.  In the immediate aftermath, the National Association for the Advancement of Colored People ("NAACP") – Minneapolis put out a request to residents of North Minneapolis to come together and protect their community.

25.  Plaintiffs Chestnut, Barnes, Thorstad, T. Walker, Mitchell, Sayers, Jackson and O. Walker all responded to this call.

26.  Formed under the auspices of the NAACP – Minneapolis, the group was named the Minnesota Freedom Riders.  The mission of the group was to respond to specific and general threats to people and property in North Minneapolis.  The group followed a violence interruption model in which, by their presence alone and without engaging in any affirmative acts of violence, the Minnesota Freedom Riders sought to help to keep the

residents of North Minneapolis safe and to prevent their community from being destroyed.

27.    As the intense civil unrest immediately following the death of George Floyd subsided, the group became known as the Minnesota Freedom Fighters ("MNFF") and became independent of the NAACP – Minneapolis.

28.    The MNFF continued to function in the model established by the NAACP for the Minnesota Freedom Riders, and continued its mission to serve and protect the community and be a bridge between the Minneapolis Police Department and the African American community in Minneapolis.

29.    MNFF at all times sought to interrupt and prevent violence and promote safety.  By furthering safety and security, the MNFF participated in many important events including memorial events for George Floyd, anti-racism protests, and visits to the Twin Cities by national leaders, including Jessie Jackson.

30.    Individual MNFF members made their presence and affiliation with the MNFF clearly known by wearing clothing, displaying patches, and wearing equipment that plainly and readily identified them as being a

part of the MNFF.  Examples follow:





31.     The MNFF worked and collaborated directly with government agencies

and non-government organizations and other entities to further the goals

of community, safety and non-violence, including partnering with the City

of Minneapolis Office of Violence Prevention (OVP) and community groups

such as the Pillsbury United Communities.

32.    With respect to the OVP, the MNFF was an unfunded group.  The OVP

facilitated the work the MNFF was doing in the community by

coordinating meetings with MNFF members and government officials

including representatives of the United States Attorney's Office for the

District of Minnesota and the Federal Bureau of Investigation.

33.    The MNFF also received recognition from leaders of the Minneapolis

Police Department for its contributions to the community as demonstrated

below:



34.    MNFF members, including specifically the Plaintiffs, acted at all times

as a community organization and never represented themselves as being

police officers.  At all times, the mission of MNFF as an organization, and of the Plaintiffs as members of the organization, was to help to protect their community through non-violence and never to interfere with law enforcement nor affirmatively use any physical force against anyone.

35.     Upon information and belief, prior to June 4, 2021, Defendants were aware generally of the MNFF and were aware that MNFF members as a group were not involved in violent protests but rather sought to deescalate potentially violent circumstances.

### D. Minnesota Freedom Fighters Respond to the Call of Minneapolis City Officials to Help Interrupt Violent Protests Breaking Out in South Minneapolis following the Killing of Winston Smith.

36.     On June 3, 2021, Winston Smith was killed by officers of the United States Marshal Service Fugitive Task Force in a parking ramp in Uptown Minneapolis near the intersection of Girard Avenue South and Lake Street West.

37.     In the aftermath of this tragedy, civil unrest again broke out in Minneapolis, including frequent protests and demonstrations in the Uptown area.

38.     On June 4, 2021, Sasha Cotton, then Director of the OVP, received a communication from Minneapolis Police Inspector Katie Blackwell, of the Minneapolis Police Department's Fifth Precinct.

39.    The Fifth Precinct of the Minneapolis Police Department includes the "Uptown" area of Minneapolis generally, and the intersection of Lake Street and Hennepin Avenue specifically.

40.    Inspector Blackwell then asked Director Cotton if any community partners could assist with the challenges that Minneapolis City Officials were expecting to occur that evening in the Uptown area of Minneapolis in response to the death of Winston Smith. Inspector Blackwell asked if the OVP could help with outreach to community partners for this purpose.

41.    In response to this request from Inspector Blackwell, Director Cotton sent a communication to community partners, both funded groups and unfunded groups, to see if they had the capacity and availability to respond to the Uptown area of Minneapolis and assist in keeping the peace between the protestors that were expected to gather and the police.

42.    Plaintiff Jackson was one of the community partners who was sent and received this communication from Director Cotton.

43.    Plaintiff Jackson was then a partner with the City of Minneapolis participating in its Group Violence Intervention Initiative and the Minneapolis Strategic Outreach Initiative through the funded group Change Equals Opportunity. Plaintiff Jackson was also known to Director Cotton and other Minneapolis City Officials as the spokesperson and as a point of contact for the MNFF.

44.     Plaintiff Jackson then contacted Chestnut, Barnes, Thorstad, T.

Walker, Mitchell, Sayers, and O. Walker, amongst others, and asked if

they would be able to drop what they were doing and respond to the call

from the Minneapolis city official to assist in keeping the peace in Uptown

Minneapolis.  All the Plaintiffs, acting collectively as the MNFF, agreed to

do so and went to the Uptown area of Minneapolis.

45.     When they arrived in the Uptown area of Minneapolis, all Plaintiffs

were wearing clothing and displaying insignia clearly identifying them as

members of the MNFF, with the exception of T. Walker.  The clothing and

insignia clearly identifying the Plaintiffs as members of MNFF included:

    a.  T-shirts with "MN Freedom Fighters" in large bold letters
        clearly displayed on the front;

    b.  Tactical vests with large identifiers including reflective letters
        spelling out "MN Freedom Fighters;"

    c.  Badges in front with a "MN Freedom Fighters" insignia below;

    d.  Face mask with the "MN Freedom Fighters" insignia; and

    e.  Vests with "Security MN Freedom Fighters" clearly displayed
        in large reflective letters in the front.

46.     While T. Walker did not have the time to put on his MNFF clothing or

obtain any MNFF insignia, at all times relevant hereto, he was in the

immediate presence of members of MNFF who clearly displayed that they were a part of this community organization.

47.    After meeting just off West Lake Street, to the east of the intersection with Hennepin Avenue, the Plaintiffs all walked as a group towards the intersection of Hennepin Avenue South and West Lake Street.

48.    As they got close to the intersection, the Plaintiffs noted that Minneapolis Police Department officers (MPD) were in the general area of the intersection of Hennepin Avenue South and West Lake Street. However, by the time the Plaintiffs reached the intersection, all Minneapolis Police Department officers suddenly left the area.

49.    When Plaintiffs were approximately a half block away from the intersection, before MPD left the intersection, unruly protestors pushed bike racks and a garbage dumpster into the intersection and lit the garbage dumpster on fire.

50.    It would have been obvious to anyone, certainly to a reasonable police officer, that none of the Plaintiffs had anything to do with such rioting and that none were a part of the unit of individuals engaged in any such activity.

51.    The eight Plaintiffs then continued to walk as a group to the northeast corner of the intersection of Hennepin Avenue South and West Lake Street.  No law enforcement was then present in the area.

52. All eight Plaintiffs at all times relevant hereto remained standing closely together in a group on the sidewalk of the northeast corner of the intersection at a clearly discernable distance away from those individuals participating in any rioting or other violent activity which was occurring in the middle of this large intersection.

53. At no time did any of the Plaintiffs participate in any riot, protesting or other concerted action with the unit of individuals who were doing so, including in the middle of the intersection of Hennepin Avenue South and West Lake Street.

54. At all times hereto, the Plaintiffs remained standing passively on the sidewalk of the northeast corner of the intersection closely together in a group, their clear purpose being to deter others from engaging in acts of violence by their collective physical presence.

55. After approximately ten to fifteen minutes standing on this corner, a large group of Minneapolis Police Officers suddenly returned to the area of the intersection of Hennepin Avenue South and West Lake Street.

56. Some of the officers, the identity of whom is presently unknown, were giving commands to the protestors in the middle of the street to move.

57. In response, and in the presence of MPD Officers, members of the unit of individuals engaged in acts of violence were loudly saying, "f*** the police, f*** the Freedom Fighters," "the Freedom Fighters are snitches"

and other derogatory phrases, clearly indicating that the MNFF members standing a distance away from them on the sidewalk of the northeast corner of the intersection were not part of their unit, and in fact were viewed as being aligned with the interests of the MPD.

58.   At no time did any MPD Officer ever communicate any order or directive to any of the Plaintiffs, who remained standing in a group on the sidewalk of the northeast corner of the intersection apart from the protestors in the street, to leave, move or otherwise disperse.

59.   A large group of MPD officers then approached the Plaintiffs.  Upon information and belief, this group of police officers included Defendant Klund, Defendant Stalboerger, Defendant Huynh, Defendant Severence, Defendant Daoheuang, Defendant Pond and Defendant Spies among other officers.

60.   An unknown officer then grabbed T. Walker who stood in the midst of the other Plaintiffs, all clearly identifiable MNFF members. The officer started to remove T. Walker from the group, was told T. Walker was a member of the MNFF, and then released T. Walker.  T. Walker then returned to stand with other MNFF members on the corner of the intersection.

61.   Almost immediately thereafter, at the direction of Defendant Klund, Minneapolis Police Officers encircled all the Plaintiffs, who remained

standing in a unit on the sidewalk of the northeast corner of the intersection.

62.   Defendant Klund then waived his MPD issued riot baton in the air and gave the command to other officers to arrest all of the Plaintiffs using words to the effect of "just take all of them to jail."

63.   After Plaintiffs were arrested, one or more unknown Minneapolis police officers took "trophy" photos of Plaintiffs Thorstad, Sayers, and Jackson on their cell phones.

64.   After Plaintiffs were arrested, and as a direct result of their wrongful arrests by the defendants, plaintiffs' mug shots or booking photographs from the Hennepin County Sheriff's Department were posted onto social media sites and web sites.  These remain accessible to this day.

*E. The Arrest of Marvin Chestnut.*

65.   Plaintiff Chestnut remained standing and acting peaceably on the sidewalk of the northeast corner of the intersection of Hennepin Avenue South and West Lake Street when he was arrested by Defendant Michael Kennedy at the direction of Defendant Klund.

66.   At the time of this arrest, Plaintiff Chestnut continued to wear clothing and display insignia clearly identifying him as a member of the MNFF.

67.   At no time did Plaintiff Chestnut partake in any of the protesting, demonstrations, or other violent criminal activity that other individuals were engaged in in the middle of the intersection.

68.   At the time Plaintiff Chestnut was arrested, it was objectively unreasonable for any law enforcement officer, including Defendants Kennedy and Klund, to believe that Plaintiff Chestnut was part of any unit engaged in criminal activity or otherwise violating the law.

69.   The arrest of Plaintiff Chestnut was therefore unlawful, as at the time of the arrest no reasonable police officer could actually believe that it would be lawful to arrest an individual who was not part of any unit engaging in any criminal activity and who was not engaging in criminal activity himself.

70.   At no time did Defendants Kennedy or Klund have arguable probable cause to believe that Plaintiff Chestnut was part of the unit of individuals who were engaged in criminal activity, or a part of any other unit engaged in criminal activity, or engaged in any criminal activity himself.

71.   Following his unlawful arrest, Plaintiff Chestnut was transported to the Hennepin County Adult Detention Center, where he was detained and held for probable cause violation of Minn. Stat. § 609.71.

72.   Plaintiff Chestnut was detained at the ADC until he was released on June 5, 2021.

73.    As a result of the actions and omissions of the above-named

Defendants, including but not limited to Defendants Kennedy and Klund,

Plaintiff Marvin Lewis Chestnut suffered significant injury including, but

not limited to, his loss of liberty, and has therefore in the past and will in

the future incur pain, embarrassment, and emotional distress.  Therefore,

Marvin Lewis Chestnut has been damaged in an amount greater than

Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

*F.  The Arrest of Lawrence Barnes.*

74.    Plaintiff Barnes remained standing and acting peaceably on the

sidewalk of the northeast corner of the intersection of Hennepin Avenue

South and West Lake Street when he was arrested by Defendant Kyle

Pond at the direction of Defendants Klund and Severence.

75.    At the time of this arrest, Plaintiff Barnes continued to wear clothing

and display insignia clearly identifying him as a member of the MNFF.

76.    At no time did Plaintiff Barnes partake in any of the protesting,

demonstrations, or other violent criminal activity that other individuals

were engaged in in the middle of the intersection.

77.    At the time Plaintiff Barnes was arrested, it was objectively

unreasonable for any law enforcement officer; including Defendants

Klund, Severence or Pond; to believe that Plaintiff Barnes was part of any

unit engaged in criminal activity or otherwise violating the law.

78.     The arrest of Plaintiff Barnes was therefore unlawful as at the time of

the arrest no reasonable police officer could actually believe that it would

be lawful to arrest an individual who was not part of a unit engaging in

any criminal activity and was not engaging in criminal activity himself.

79.     At no time did Defendant Klund, Severence, or Pond have arguable

probable cause to believe that Plaintiff Barnes was part of the unit of

individuals who were engaged in criminal activity, or a part of any other

unit engaged in criminal activity, or engaged in any criminal activity

himself.

80.     Following his unlawful arrest, Plaintiff Barnes was transported to the

Hennepin County Adult Detention Center, where he was detained and

held for probable cause violation of Minn. Stat. § 609.71.

81.     Plaintiff Barnes was detained at the ADC until he was released on

June 5, 2021.

82.     As a result of the actions and omissions of the above-named

Defendants; including but not limited to Defendants Klund, Severence and

Pond; Plaintiff Lawrence Anthony Barnes suffered significant injury

including, but not limited to, his loss of liberty, and has therefore in the

past and will in the future incur pain, embarrassment, and emotional

distress.  Therefore, Lawrence Anthony Barnes has been damaged in an

amount greater than Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

*G. The Arrest of Charles Nguyen Thorstad.*

83.    Plaintiff Thorstad remained standing and acting peaceably on the sidewalk of the northeast corner of the intersection of Hennepin Avenue South and West Lake Street when he was arrested by Defendant Brown at the direction of Defendant Klund.

84.    At the time of this arrest, Plaintiff Thorstad continued to wear clothing and display insignia clearly identifying him as a member of the MNFF.

85.    At no time did Plaintiff Thorstad partake in any of the protesting, demonstrations, or other violent criminal activity that other individuals were engaged in in the middle of the intersection.

86.    At the time Plaintiff Thorstad was arrested, it was objectively unreasonable for any law enforcement officer, including Defendants Brown or Klund, to believe that Plaintiff Thorstad was part of any unit engaged in criminal activity or otherwise violating the law.

87.    The arrest of Plaintiff Thorstad was therefore unlawful as at the time of the arrest no reasonable police officer could actually believe that it would be lawful to arrest an individual who was not part of a unit engaging in any criminal activity and was not engaging in criminal activity himself.

88.   At no time did Defendant Brown or Klund have arguable probable cause to believe that Plaintiff Thorstad was part of the unit of individuals who were engaged in criminal activity, or a part of any other unit engaged in criminal activity, or engaged in any criminal activity himself.

89.   Following his unlawful arrest, Plaintiff Thorstad was transported to the Hennepin County Adult Detention Center, where he was detained and held for probable cause violation of Minn. Stat. § 609.71.

90.   Plaintiff Thorstad was detained at the ADC until he was released on June 5, 2021.

91.   As a result of the actions and omissions of the above-named Defendants, including but not limited to Defendants Brown and Klund, Plaintiff Charles Nguyen Thorstad suffered significant injury including, but not limited to, his loss of liberty, and has therefore in the past and will in the future incur pain, embarrassment, and emotional distress. Therefore, Charles Nguyen Thorstad has been damaged in an amount greater than Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

*H. The Arrest of Tywan Lamont Walker.*

92.   Plaintiff T. Walker remained standing and acting peaceably on the sidewalk of the northeast corner of the intersection of Hennepin Avenue South and West Lake Street when he was arrested by Defendant Stalboerger at the direction of Defendant Klund.

93.    At the time of this arrest, Plaintiff T. Walker stood with MNFF members who wore clothing and displayed insignia clearly identifying them as MNFF.

94.    At no time did Plaintiff T. Walker partake in any of the protesting, demonstrations, or other violent criminal activity that other individuals were engaged in in the middle of the intersection.

95.    At the time Plaintiff T. Walker was arrested, it was objectively unreasonable for any law enforcement officer, including Defendants Stalboerger and Klund, to believe that Plaintiff T. Walker was part of any unit engaged in criminal activity or otherwise violating the law.

96.    The arrest of Plaintiff T. Walker was therefore unlawful as at the time of the arrest no reasonable police officer could actually believe that it would be lawful to arrest an individual who was not part of a unit engaging in any criminal activity and was not engaging in criminal activity himself.

97.    At no time did Defendants Stalboerger or Klund have arguable probable cause to believe that Plaintiff T. Walker was part of the unit of individuals who were engaged in criminal activity, or a part of any other unit engaged in criminal activity, or engaged in any criminal activity himself.

98.   Following his unlawful arrest, Plaintiff T. Walker was transported to the Hennepin County Adult Detention Center, where he was detained and held for probable cause violation of Minn. Stat. § 609.71.

99.   Plaintiff T. Walker was detained at the ADC until he was released on June 5, 2021.

100.   As a result of the actions and omissions of the above-named Defendants, including but not limited to Defendants Stalboerger and Klund.  Tywan Lamont Walker suffered significant injury including, but not limited to, his loss of liberty, and has therefore in the past and will in the future incur pain, embarrassment, and emotional distress.  Therefore, Tywan Lamont Walker has been damaged in an amount greater than Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

   I.   *The Arrest of Larry Keshawn Mitchell.*

101.   Plaintiff Mitchell remained standing and acting peaceably on the sidewalk of the northeast corner of the intersection of Hennepin Avenue South and West Lake Street when he was arrested by Defendant Tuma at the direction of Defendant Klund.

102.   At the time of this arrest, Plaintiff Mitchell continued to wear clothing and display insignia clearly identifying him as a member of the MNFF.

103.   At no time did Plaintiff Mitchell partake in any of the protesting, demonstrations, or other violent criminal activity that other individuals were engaged in in the middle of the intersection.

104.   At the time Plaintiff Mitchell was arrested, it was objectively unreasonable for any law enforcement officer, including Defendants Tuma and Klund, to believe that Plaintiff Mitchell was part of any unit engaged in criminal activity or otherwise violating the law.

105.   The arrest of Plaintiff Mitchell was therefore unlawful as at the time of the arrest no reasonable police officer could actually believe that it would be lawful to arrest an individual who was not part of a unit engaging in any criminal activity and was not engaging in criminal activity himself.

106.   At no time did Defendants Tuma or Klund have arguable probable cause to believe that Plaintiff Mitchell was part of the unit of individuals who were engaged in criminal activity, or a part of any other unit engaged in criminal activity, or engaged in any criminal activity himself.

107.   Following his unlawful arrest, Plaintiff Mitchell was transported to the Hennepin County Adult Detention Center, where he was detained and held for probable cause violation of Minn. Stat. § 609.71.

108.   Plaintiff Mitchell was detained at the ADC until he was released on June 5, 2021.

109.   As a result of the actions and omissions of the above-named

Defendants, including but not limited to Defendants Tuma and Klund,

Plaintiff Larry Keshawn Mitchell suffered significant injury including, but

not limited to, his loss of liberty, and has therefore in the past and will in

the future incur pain, embarrassment, and emotional distress.  Therefore,

Larry Keshawn Mitchell has been damaged in an amount greater than

Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

*J.  The Arrest of Robert Bradley Sayers.*

110.   Plaintiff Sayers remained standing and acting peaceably on the

sidewalk of the northeast corner of the intersection of Hennepin Avenue

South and West Lake Street when he was arrested by Defendant Huynh

at the direction of Defendant Severence.

111.   At the time of this arrest, Plaintiff Sayers continued to wear clothing

and display insignia clearly identifying him as a member of the MNFF.

112.   At no time did Plaintiff Sayers partake in any of the protesting,

demonstrations, or other violent criminal activity that other individuals

were engaged in in the middle of the intersection.

113.   At the time Plaintiff Sayers was arrested, it was objectively

unreasonable for any law enforcement officer, including Defendants

Severence and Huynh, to believe that Plaintiff Sayers was part of any unit

engaged in criminal activity or otherwise violating the law.

114.   The arrest of Plaintiff Sayers was therefore unlawful as at the time of the arrest no reasonable police officer could actually believe that it would be lawful to arrest an individual who was not part of a unit engaging in any criminal activity and was not engaging in criminal activity himself.

115.   At no time did Defendants Severence or Huynh have arguable probable cause to believe that Plaintiff Sayers was part of the unit of individuals who were engaged in criminal activity, or a part of any other unit engaged in criminal activity, or engaged in any criminal activity himself.

116.   Following his unlawful arrest, Plaintiff Sayers was transported to the Hennepin County Adult Detention Center, where he was detained and held for probable cause violation of Minn. Stat. § 609.71.

117.   Plaintiff Sayers was detained at the ADC until he was released on June 5, 2021.

118.   As a result of the actions and omissions of the above-named Defendants, including but not limited to Defendants Huynh and Severence, Plaintiff Robert Bradley Sayers suffered significant injury including to but not limited to, his loss of liberty, and has therefore in the past and will in the future incur pain, embarrassment, and emotional distress.  Therefore, Robert Bradley Sayers has been damaged in an amount greater than Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

### K. The Arrest of Nieta Jamil Aki Jackson.

119.   Plaintiff Jackson remained standing and acting peaceably on the sidewalk of the northeast corner of the intersection of Hennepin Avenue South and West Lake Street when he was arrested by Defendant Daoheuang at the direction of Defendant Severence.

120.   At the time of this arrest, Plaintiff Jackson continued to wear clothing and display insignia clearly identifying him as a member of the MNFF.

121.   At no time did Plaintiff Jackson partake in any of the protesting, demonstrations, or other violent criminal activity that other individuals were engaged in in the middle of the intersection.

122.   At the time of his arrest, Plaintiff Jackson was visibly and audibly on the phone with then OVP Director Cotton and then Chief of the Minneapolis Police Department Medaria Arrandondo advising them that certain MPD officers were arresting the Plaintiffs, apparently for responding to the City's call for help, though they were doing nothing wrong.

123.   At the time Plaintiff Jackson was arrested, it was objectively unreasonable for any law enforcement officer, including Defendants Severence and Daoheuang, to believe that Plaintiff Jackson was part of any unit engaged in criminal activity or otherwise violating the law.

124.   The arrest of Plaintiff Jackson was therefore unlawful as at the time of the arrest no reasonable police officer could actually believe that it would be lawful to arrest an individual who was not part of a unit engaging in any criminal activity and was not engaging in criminal activity himself.

125.   At no time did Defendants Severence or Daoheuang have arguable probable cause to believe that Plaintiff Jackson was part of the unit of individuals who were engaged in criminal activity, or a part of any other unit engaged in criminal activity, or engaged in any criminal activity himself.

126.   Following his unlawful arrest, Plaintiff Jackson was transported to the Hennepin County Adult Detention Center where he was detained and held for probable cause violation of Minn. Stat. § 609.71.

127.   Plaintiff Jackson was detained at the ADC until he was released on June 5, 2021.

128.   As a result of the actions and omissions of the above-named Defendants, including but not limited to Defendants Daoheuang and Severence, Plaintiff Nieta Jamil Aki Jackson suffered significant injury including, but not limited to, his loss of liberty, and has therefore in the past and will in the future incur pain, embarrassment, and emotional distress.  Therefore, Nieta Jamil Aki Jackson has been damaged in an

amount greater than Seventy-Five Thousand and no/100 ($75,000.00)

Dollars.

*L. The Arrest of Otis Lee Walker.*

129.   Plaintiff O. Walker remained standing and acting peaceably on the

sidewalk of the northeast corner of the intersection of Hennepin Avenue

South and West Lake Street when he was arrested by Defendant Spies at

the direction of Defendant Klund.

130.   At the time of this arrest, Plaintiff O. Walker continued to wear

clothing and display insignia clearly identifying him as a member of the

MNFF.

131.   At no time did Plaintiff O. Walker partake in any of the protesting,

demonstrations, or other violent criminal activity that other individuals

were engaged in in the middle of the intersection.

132.   At the time Plaintiff O. Walker was arrested, it was objectively

unreasonable for any law enforcement officer, including Defendants Spies

and Klund, to believe that Plaintiff O. Walker was part of any unit

engaged in criminal activity or otherwise violating the law.

133.   The arrest of Plaintiff O. Walker was therefore unlawful as at the time

of the arrest no reasonable police officer could actually believe that it

would be lawful to arrest an individual who was not part of a unit

engaging in any criminal activity and was not engaging in criminal activity himself.

134.   At no time did Defendants Spies or Klund have arguable probable cause to believe that Plaintiff O. Walker was part of the unit of individuals who were engaged in criminal activity, or a part of any other unit engaged in criminal activity, or engaged in any criminal activity himself.

135.   Following his unlawful arrest, Plaintiff O. Walker was transported to the Hennepin County Adult Detention Center, where he was detained and held for probable cause violation of Minn. Stat. § 609.71.

136.   Plaintiff O. Walker was detained at the ADC until he was released on June 5, 2021.

137.   As a result of the actions and omissions of the above-named Defendants, including but not limited to Defendants Spies and Klund, Plaintiff Otis Lee Walker suffered significant injury including, but not limited to, his loss of liberty, and has therefore in the past and will in the future incur pain, embarrassment, and emotional distress.  Therefore, Otis Lee Walker has been damaged in an amount greater than Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

## V.   FEDERAL CLAIMS AGAINST DEFENDANTS KLUND, KENNEDY, BROWN, TUMA, STALBOERGER, HUYNH, SEVERENCE, DAODHEUANG, POND, AND SPIES IN THEIR INDIVIDUAL CAPACITIES

*Count I.  42 U.S.C. §1983:  Unreasonable Seizure in Violation of the Fourth Amendment: Marvin Lewis Chestnut.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further state and allege as follows.

138.  As of June 4, 2021, Marvin Lewis Chestnut had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

139.  Defendants Darcy Klund and Michael Kennedy violated this right when they caused plaintiff to be arrested without arguable probable cause, thereby depriving the plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

140.  That such conduct by Defendants Klund and Kennedy was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions was apparent in light of the then clearly established law.

141.  That as a result of the actions of Defendants Klund and Kennedy in unreasonably seizing Chestnut without arguable probable cause, he sustained the injuries and incurred the damages as set forth in paragraph 73 above.

*Count II.     42 U.S.C. §1983:  Unreasonable Seizure in Violation of the Fourth Amendment: Lawrence Anthony Barnes.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further state and allege as follows.

142.  As of June 4, 2021, Lawrence Anthony Barnes had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

143.  Defendants Darcy Klund, Severence and Pond violated this right when they caused plaintiff to be arrested without arguable probable cause, thereby depriving the plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

144.  That such conduct by Defendants Klund, Severence and Pond was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions was apparent in light of the then clearly established law.

145.  That as a result of the actions of Defendants Klund, Severence and Pond in unreasonably seizing Barnes without arguable probable cause, he sustained the injuries and incurred the damages as set forth in paragraph 82 above.

*Count III.   42 U.S.C. §1983:  Unreasonable Seizure in Violation of the Fourth Amendment: Charles Nguyen Thorstad.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further state and allege as follows.

146.  As of June 4, 2021, Charles Nguyen Thorstad had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

147.  Defendants Brown and Klund violated this right when they caused plaintiff to be arrested without arguable probable cause, thereby depriving the plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

148.  That such conduct by Defendants Brown and Klund was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions was apparent in light of the then clearly established law.

149.  That as a result of the actions of Defendants Brown and Klund in unreasonably seizing Thorstad without arguable probable cause, he sustained the injuries and incurred the damages as set forth in paragraph 91 above.

*Count IV.   42 U.S.C. §1983:  Unreasonable Seizure in Violation of the Fourth Amendment: Tywan Lamont Walker.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further state and allege as follows.

150.  As of June 4, 2021, Tywan Lamont Walker had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

151.  Defendants Stalboerger and Klund violated this right when they caused plaintiff to be arrested without arguable probable cause, thereby depriving the plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

152.  That such conduct by Defendants Stalboerger and Klund was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions was apparent in light of the then clearly established law.

153.  That as a result of the actions of Defendants Stalboerger and Klund in unreasonably seizing T. Walker without arguable probable cause, he sustained the injuries and incurred the damages as set forth in paragraph 100 above.

*Count V.     42 U.S.C. §1983:  Unreasonable Seizure in Violation of the
Fourth Amendment: Larry Keshawn Mitchell.*

Plaintiffs reallege the above allegations as if here and after set forth in full
and further state and allege as follows.

154.  As of June 4, 2021, Larry Keshawn Mitchell had a clearly established
right under the Fourth Amendment to the United States Constitution not
to be subject to a warrantless arrest without probable cause.

155.  Defendants Tuma and Klund violated this right when they caused
plaintiff to be arrested without arguable probable cause, thereby depriving
the plaintiff of his right under the Fourth Amendment to the United
States Constitution to be free from unreasonable seizure in violation of 42
U.S.C. §1983.

156.  That such conduct by Defendants Tuma and Klund was objectively
unreasonable in light of the totality of the then existing circumstances,
and the unlawfulness of such actions was apparent in light of the then
clearly established law.

157.  That as a result of the actions of Defendants Tuma and Klund in
unreasonably seizing Mitchell without arguable probable cause, he
sustained the injuries and incurred the damages as set forth in paragraph
109 above.

*Count VI.    42 U.S.C. §1983:  Unreasonable Seizure in Violation of the Fourth Amendment: Robert Bradley Sayers.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further state and allege as follows.

158.  As of June 4, 2021, Robert Bradley Sayers had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

159.  Defendants Huynh and Severence violated this right when they caused plaintiff to be arrested without arguable probable cause, thereby depriving the plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

160.  That such conduct by Defendants Huynh and Severence was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions was apparent in light of the then clearly established law.

161.  That as a result of the actions of Defendants Huynh and Severence in unreasonably seizing Sayers without arguable probable cause, he sustained the injuries and incurred the damages as set forth in paragraph 118 above.

*Count VII.   42 U.S.C. §1983:   Unreasonable Seizure in Violation of the Fourth Amendment: Nieta Jamil Aki Jackson.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further state and allege as follows.

162.   As of June 4, 2021, Nieta Jamil Aki Jackson had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

163.   Defendants Daoheuang and Severence violated this right when they caused plaintiff to be arrested without arguable probable cause, thereby depriving the plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

164.   That such conduct by Defendants Daoheuang and Severence was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions was apparent in light of the then clearly established law.

165.   That as a result of the actions of Defendants Daoheuang and Severence in unreasonably seizing Jackson without arguable probable cause, he sustained the injuries and incurred the damages as set forth in paragraph 128 above.

*Count VIII. 42 U.S.C. §1983:  Unreasonable Seizure in Violation of the Fourth Amendment: Otis Lee Walker.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further states and alleges as follows.

166. As of June 4, 2021, Otis Lee Walker had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

167. Defendants Spies and Klund violated this right when they caused plaintiff to be arrested without arguable probable cause, thereby depriving the plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

168. That such conduct by Defendants Spies and Klund was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions was apparent in light of the then clearly established law.

169. That as a result of the actions of Defendants Spies and Klund in unreasonably seizing O. Walker without arguable probable cause, he sustained the injuries and incurred the damages as set forth in paragraph 137 above.

*Count IX.  Punitive Damages Under Federal Law.*

Plaintiffs reallege the above allegations as if here and after set forth in full and further state and allege as follows.

170.  All of the aforementioned acts, errors and omissions of defendants Klund, Kennedy, Brown, Tuma, Stalboerger, Huynh, Daoheuang, Pond, and Spies were committed in bad faith and with reckless disregard for the rights and safety of the plaintiffs as well as other citizens, so as to subject said defendants to punitive damages pursuant to the statutes and common law of the United States of America.

## VI. PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully prays that this Court grant them relief as follows:

1. Awarding judgment in favor of Marvin Lewis Chestnut against defendants Klund and Kennedy, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

2. Awarding judgment in favor of Lawrence Anthony Barnes against defendants Pond, Klund, and Severence, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

3. Awarding judgment in favor of Charles Nguyen Thorstad against defendants Brown and Klund, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

4. Awarding judgment in favor of Tywan Lamont Walker against defendants Stalboerger and Klund, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

5. Awarding judgment in favor of Larry Keshawn Mitchell against defendants Tuma and Klund, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

6. Awarding judgment in favor of Robert Bradley Sayers against defendants Huynh and Severence, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

7. Awarding judgment in favor of Nieta Jamil Aki Jackson against defendants Daoheuang and Severence, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

8. Awarding judgment in favor of Otis Lee Walker against defendants Spies and Klund, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

9. Awarding judgment in favor of all plaintiffs against defendants jointly and severally in an amount greater than $50,000.00 as and for punitive damages pursuant to 42 U.S.C. §1983.

10. Awarding plaintiffs their reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

11. Awarding plaintiffs their reasonable costs and disbursements herein.

12.  For such other and further relief as to the Court is just and equitable.


GOETZ & ECKLAND P.A.


By: _____
FREDERICK J. GOETZ
Attorney Registration No. 185425
Banks Building
615 1st Avenue N.E., Suite 425
Minneapolis, MN 55413
(612) 874-1552


ATTORNEYS FOR PLAINTIFFS